UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL NORWOOD,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Respondent. | Civil Action No. 15-2996 (RBK)<br><br><br>OPINION |

**KUGLER**, District Judge:

　　Presently before the Court is Petitioner Michael Norwood's amended motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 4). The Government has filed a response to the motion (ECF No. 28), to which Mr. Norwood has replied. (ECF Nos. 31, 35-36, 41, 43). Also before the Court are Mr. Norwood's motion for an expedited ruling (ECF No. 47) and motion for a writ of mandamus. (ECF No. 48). For the following reasons, this Court will deny Mr. Norwood's motion to vacate sentence, will deny him a certificate of appealability, and will deny as moot his remaining motions.

**I. BACKGROUND**

　　Because the propriety of Mr. Norwood's convictions has been litigated time and again both on direct review and via collateral attack, and because Mr. Norwood raises a single, discrete claim in his current motion to vacate sentence, only a brief recitation of the relevant facts is necessary in this matter. In a recent decision affirming Mr. Norwood's resentencing, the Third Circuit laid out the factual and procedural background of this matter as follows:

　　　　On April 12, 1996, Norwood entered the Amboy National

Bank in Old Bridge, New Jersey and walked out with over $15,000 that he had demanded from the bank tellers, while brandishing a handgun. Shortly thereafter, Norwood approached a motorist, demanded that he get out of his car at gunpoint, and drove away. Later, the motorist's vehicle was recovered, together with Norwood's handgun. The following day the police arrested Norwood[.]

While the procedural history is rather extensive, a truncated overview is warranted. At Norwood's first trial, Norwood waived his right to counsel and represented himself. Assistant Federal Public Defender ("AFPD") Lori Koch served as standby counsel. A mistrial was declared when the jury was unable to reach a verdict.

At the bifurcated retrial Norwood represented himself again. The jury found Norwood guilty of bank robbery, armed bank robbery, carjacking and two counts of use of a firearm in relation to a crime of violence (one for robbery and another for carjacking). In the second half of the bifurcated trial, a jury found Norwood guilty of possession of a firearm by an armed career criminal. Based on these convictions, Norwood received an aggregate prison term of life plus 25 years.

After this Court rejected Norwood's first appeal, *United States v. Norwood*, 142 F.3d 430 (3d Cir. 1998), Norwood filed a petition for collateral review pursuant to 28 U.S.C. § 2255. The District Court granted the petition as to a sentence miscalculation but denied the other claims. At a resentencing hearing, Norwood raised six additional claims and the District Court denied each of them. Norwood appealed both the partial denial of his first § 2255 motion, docketed by this Court as No. 99–5510, and the denial of his six additional claims, docketed by this Court as No. 99–5992. After consolidating the two appeals, this Court concluded that it lacked jurisdiction to consider the claims in either appeal and therefore dismissed both. *Norwood v. United States*, 229 F.3d 1138 (3d Cir. 2000).

In September 1999, the District Court granted Norwood's pro se motion for the appointment of new counsel, other than AFPD Koch, finding that an actual conflict existed because Norwood filed a complaint against AFPD Koch with the New Jersey Supreme Court's Office of Attorney Ethics.

In June 2006, Norwood filed a second § 2255 petition, which was also denied by the District Court. Norwood did not appeal the District Court's order.

Norwood's third § 2255 petition, which was filed in December 2010 and claimed for the first time that his sentences for bank robbery and armed bank robbery violated double jeopardy, was denied by the District Court; however, this Court ultimately vacated and remanded the District Court's order because Norwood's conviction for bank robbery (Count One) and armed bank robbery (Count Two) did in fact violate the Double Jeopardy clause. *Norwood v. United States*, 472 [F. App'x] 113 (3d Cir. 2012).

On remand, in April 2013, the District Court issued an amended judgment on certain counts of the indictment without holding a formal resentencing hearing. On appeal, the Government conceded that the District Court erred and that Norwood was entitled to a de novo resentencing hearing.

Prior to this resentencing hearing, the District Court appointed AFPD Christopher O'Malley to represent Norwood. Thereafter, Norwood moved to disqualify AFPD O'Malley, arguing that his previous conflict with AFPD Koch should be imputed to the entire Federal Public Defender's Office. The District Court denied the motion. Norwood then filed a motion to proceed pro se, which the District Court granted. In June 2013, the District Court held the resentencing hearing (the "June 2013 Resentencing") and resentenced Norwood to an aggregate term of imprisonment of five hundred months.

*United States v. Norwood*, 566 F. App'x 123, 124-25 (3d Cir.), *cert. denied*, 135 S. Ct. 344 (2014).

Following his June 2013 resentencing, Mr. Norwood appealed, and the Third Circuit affirmed. *Id.* at 129. The Supreme Court thereafter denied Mr. Norwood's petition for certiorari on October 6, 2014. 135 S. Ct. at 344. Mr. Norwood filed the instant § 2255 motion on or about April 29, 2015, and filed his operative amended motion on June 23, 2015.[1] (ECF No. 1, 4).

Mr. Norwood's current challenge focuses on the forensic hair analysis testimony

3

provided at his retrial. During both of Mr. Norwood's trials, the Government offered the testimony of Agent Karen Lanning, a forensic hair examiner employed by the FBI. (Gov'ts Exhibit E at 1532).2 At Mr. Norwood's retrial, Lanning testified that she had been a forensic examiner for seven and a half years and that she had conducted thousands of hair and fiber examinations. (*Id.* at 1534). After explaining the basic methodology used for examining hair and fiber evidence, Lanning testified as to her involvement in the investigation in Mr. Norwood's case. (*Id.* at 1538-42).

Lanning explained that she was tasked with examining the blue ski mask found in Mr. Norwood's abandoned car, which she scraped for any hair samples that could be recovered. (*Id.* at 1543). Based on fibers collected from the mask, Lanning testified that fibers recovered from the stolen getaway car used by the bank robbers were consistent with fibers taken from the ski mask recovered from Mr. Norwood's abandoned car. (*Id.* at 1544). Agent Lanning tempered that testimony, however, by informing the jury that consistency was not an absolutely accurate measure as multiple masks would have similar fibers. (*Id.*).

Lanning then turned to the hair samples taken from the ski mask. (*Id.* at 1546). She testified that the recovered negroid hair from the mask were compared with Mr. Norwood's hair. (*Id.* at 1546-47). Based on her examination of that hair, Lanning concluded that Mr. Norwood's hair was "consistent with" the negroid hair found in the ski mask. (*Id.* at 1547). Agent Lanning reached this conclusion based on her analysis of the two hairs which shared all of the sixteen examined characteristics. (*Id.*). When asked if someone other than Mr. Norwood could have hair consistent with the mask as well, Agent Lanning stated that it was "possible" and that "hair is not a positive means of identification" and was "not like a fingerprint [as] two people could

4

possibly have the same characteristics to where the hairs are indistinguishable." (*Id.* at 1547-48). Agent Lanning thus stated that she could not eliminate the possibility that someone other than Mr. Norwood had provided the hairs found in the mask. (*Id.* at 1548). When asked how common it was for two people to share the same characteristics, Agent Lanning stated it was uncommon, and that she had only seen it once out of several thousand examinations, specifically when dealing with a set of triplets. (*Id.*).

On cross examination, Agent Lanning acknowledged that another hair, from a Caucasian individual, was also recovered from the ski mask which clearly did not come from Mr. Norwood, who is African-American. (*Id.* at 1565). Lanning also admitted on cross-examination that no DNA testing had been done on the hairs as DNA tests were not standard procedure at the time that the examination of Mr. Norwood's hairs had been undertaken. (*Id.* at 1574). Agent Lanning also agreed with Mr. Norwood on cross-examination that she could not definitively state how either of the hairs, Caucasian or negroid, had gotten on the mask, but that they could either have been transferred from another source or have come from someone wearing the mask. (*Id.* at 1576). When asked by Mr. Norwood whether his hairs could have gotten on the mask when it was placed in his car, which was abandoned on the highway, Agent Lanning also admitted it was possible that the hair could have come from the car seats and gotten on the mask through contact with the car. (*Id.* at 1577).

Following the conclusion of Mr. Norwood's trial and various direct appeals, in July 2014, U.S. Department of Justice issued a task force report which indicated that, during numerous trials in the 1990s, various FBI and state court experts had provided testimony which overstated the value and efficacy of certain types of forensic testimony, including forensic hair examinations.

5

(Gov't's Exhibit F). Based on the conclusions in that task force report, both the DOJ and the Innocence project were tasked with examining the testimony in the numerous cases in which such testimony was given to determine which cases contained errors which overstated the forensic evidence, possibly affecting jury verdicts. In examining such cases, these organizations looked for three kinds of errors dealing with hair analysis: the first and most serious type of error involved a forensic expert stating that a hair could be identified as belonging to a single individual to the exclusion of all others, the second type of error involved an expert providing a specific statistical weight or probability to the likelihood that a given hair came from a given suspect, and the third and least serious type of error involved cases where the examiner cited the number of cases they had worked as opposed to the very few times hairs could not be distinguished as a basis for bolstering their conclusions in the specific case in which they were testifying. (*See* Gov't's Exhibit D at 1433).

Both the Government and Innocence Project inspected Agent Lanning's testimony in both Mr. Norwood's original and re-trial. While both the Government and the Innocence Project agreed that Lanning made numerous errors in Mr. Norwood's first trial (*see* Gov't's Exhibit D), which resulted in a mistrial, they disagreed regarding whether any errors occurred during the re-trial. (*See* Gov''s Exhibit E). While the Government concluded that no errors had occurred during the re-trial, the Innocence Project instead cited a few instances in which a type 3 error had occurred, specifically when Lanning stated that she had only seen one case in which she could not distinguish the hairs of two individuals. (*Id.* at 1523-25). Even the report most favorable to Mr. Norwood, that of the Innocence Project, failed to identify any errors during the re-trial of the most serious types, types one or two, instead finding only a few type three errors, the least

serious type of error for which either group searched the record. (*Id.*).

## II. DISCUSSION

### A. Standard of Review

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B. Analysis

As Mr. Norwood has withdrawn his proposed amended complaint adding a claim challenging his sentencing as a career offender (*see* ECF Nos. 38, 40, 42, 44-46), his current motion to vacate sentence presents a single claim: that the expert hair analysis testimony

7

presented at his 1997 retrial was so flawed as to deny him Due Process, presumably because it amounted to the Government using evidence it knew to be misleading. Even assuming, *arguendo*, that the hair examiner's testimony was problematic for the reasons Mr. Norwood asserts, it still does not follow that he is entitled to relief. "In the absence of [a structural error requiring] automatic reversal, relief [from a criminal conviction] is appropriate only if the prosecution cannot demonstrate harmlessness. *Davis v. Ayala*, --- U.S. ---, 135 S. Ct. 2187, 2197 (2015). "In a collateral proceedings . . . petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Under this standard, relief is only appropriate where the court has "grave doubt about whether a trial error . . . had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 2198 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). This requires more than a "reasonable probability" that the error harmed the petitioner's case. *Id.* Mr. Norwood has provided no basis for concluding that the alleged error in this matter was structural in nature, and as relevant persuasive authority suggests otherwise, *see e.g. United States v. Clay*, 720 F.3d 1021, 1027 (8th Cir. 2013) (applying *Brecht* harmless error standard to a false testimony claim), he would only be entitled to habeas relief if the alleged error were not harmless.

It is clear in this matter that the testimony Mr. Norwood challenges was harmless in light of the strong evidence of his guilt presented at trial. While Agent Lanning's testimony did provide an extra link in the chain between the bank robbery and the roadside carjacking in this matter, her testimony was also subject to numerous caveats. Agent Lanning did not suggest that Mr. Norwood was definitely the source of the hair in the ski mask, only that his hairs were

consistent with one of two hairs recovered from the mask. Agent Lanning likewise specifically stated that hair examination is not as exact as fingerprinting, and could not provide an absolute identification. Combined with her admission on cross examination that the hair in the mask consistent with Mr. Norwood's hair could have gotten on the mask when it was placed in Mr. Norwood's car which he contended had been stolen prior to the robbery, these statements limited the prejudicial value Agent Lanning's testimony could have had in this case.

Considering that even the Innocence Project found only the least problematic type of error in her testimony, the potential prejudice resulting from the allegedly exaggerated testimony offered by Lanning was relatively minor. Indeed, save for her statements as to the rarity of matching hairs for two different individuals, there was little in the way of impropriety in Lanning's testimony, and Lanning otherwise readily explained the limitations and lack of exactness or strong identifying power present in forensic hair examination. Given that the evidence at Mr. Norwood's trial included two eyewitnesses who identified Mr. Norwood as the carjacker who wore clothes matching the description of those worn by the bank robber, as well as several witnesses from the bank who gave a description of the bank robber which matched that of Mr. Norwood as well as provided a description of the robber's blue ski mask which matched the mask found in Mr. Norwood's car abandoned on the highway, it is clear that Lanning's allegedly exaggerated testimony did not have a "substantial and injurious effect" upon the jury's verdict. *See Ayala*, 135 S. Ct. at 2197-98.

The Government at trial presented strong eye witness testimony connecting Mr. Norwood to the carjacking, and strong circumstantial evidence tying the carjacker to the bank robbery, including the matching clothing of the robber and Norwood, their matching descriptions, and the

9

blue ski mask with a safety pin in it recovered from Mr. Norwood's car which matched the description given of the robber's mask. Even without Lanning's testimony, the Government therefore provided solid evidence connecting Mr. Norwood to every facet of the crimes of which he was found guilty. This Court therefore concludes that any error that Agent Lanning's testimony at Mr. Norwood's retrial presented was harmless in light of the evidence of Mr. Norwood's guilt produced at trial and therefore does not warrant habeas relief.[3] *See Ayala*, 135 S. Ct. at 2197-98.

As this Court is denying Mr. Norwood's motion to vacate sentence, the only matters outstanding in this case are Mr. Norwood's motions for an expedited decision and for a writ of mandamus. As both of those motions sought only to compel a decision as to Mr. Norwood's motion to vacate sentence, and as the Court has now decided that motion to vacate sentence, both of Mr. Norwood's outstanding motions are essentially moot as Mr. Norwood has received the relief he sought within them. Mr. Norwood's motions for an expedited decision and for a writ of mandamus shall therefore be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because any error presented by the hair analysis testimony at Mr. Norwood's retrial was ultimately harmless in light of the significant evidence of guilt presented at trial, jurists of

reason would not disagree with this Court's conclusion that Mr. Norwood is not entitled to relief, and Mr. Norwood has therefore failed to show that the issue presented in this matter is adequate to deserve further encouragement. As such, this Court will deny Mr. Norwood a certificate of appealability. *Id.*

## IV. CONCLUSION

For the reasons expressed above, this Court will DENY Mr. Norwood's amended motion to vacate sentence, will DENY Mr. Norwood a certificate of appealability, and will DENY Mr. Norwood's motion for an expedited ruling and motion for a writ of mandamus as moot. An appropriate order follows.

Hon. Robert B. Kugler,
United States District Judge

11/22/2016

---

[1] Although Mr. Norwood at one point sought to amend his current motion to add a second claim, arguing that he no longer qualified as an armed career criminal (*see* ECF Nos. 37, 38), he ultimately chose to withdraw that claim. (ECF Nos. 44-46).

[2] All page numbers used for the Government's Exhibits in this opinion refer to the unified page numbering system which runs through all of the Government's Exhibits, rather than any page numbers assigned to the individual documents in the Government's submissions.

[3] In his amended motion to vacate, Mr. Norwood provides portions of Agent Lanning's testimony at his original trial in support of his contention that she provided erroneous testimony which resulted in his conviction. Because his first trial ended in a mistrial, and because the jury which convicted him never heard any of the allegedly erroneous testimony provided at the first trial, that testimony provides no basis for relief as it could not have prejudiced him at his retrial.